UNITED VERDE EXTENSION MINING CO.
v. HOWE et al.

(Circuit Court of Appeals. Ninth Circuit.
November 2, 1925.)

No. 4611.

1. **Taxation ☞530—Payment of taxes pending suit to enjoin collection whether deemed voluntary or involuntary held to render controversy over such taxes moot.**

Where, pending suit to enjoin collection of taxes on grounds of erroneous valuation, they were paid under an agreement to remit interest and penalties, and to make subsequent valuations in particular manner, *held*, such payment, whether deemed voluntary or involuntary, rendered moot any controversy over taxes so paid.

2. **Taxation ☞611(1)—Court held unwarranted in retaining jurisdiction of suit to enjoin collection of taxes for purpose of inquiring into legality of subsequent assessment.**

Where, pending suit to enjoin collection of taxes that were paid under agreement to remit interest and penalties and to adopt particular method of valuation in future, thus rendering questions affecting validity of such taxes moot, *held*, court was unwarranted in retaining jurisdiction for purpose of inquiring into legality of methods employed in assessing and valuing for succeeding year taxes for which were then levied.

Appeal from District Court of the United States for the District of Arizona; F. C. Jacobs, Judge.

Suit by the United Verde Extension Mining Company against Charles R. Howe and others. From a decree of dismissal, plaintiff appeals. Affirmed.

Paul Armitage, of New York City, and Edward W. Rice and Clifton Mathews, both of Globe, Ariz., for appellant.

A. R. Lynch, Asst. Atty. Gen., and P. W. O'Sullivan and J. H. Morgan, both of Prescott, Ariz., for appellees.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

RUDKIN, Circuit Judge. The plaintiff below is the owner of and operates a producing mine, consisting of numerous patented and unpatented mining claims, in Yavapai county, Ariz. The present suit was instituted by the mining company to restrain the collection of taxes levied against this mining property by the taxing officers of Arizona for the year 1922, and to restrain such officers from assessing the mining property for 1923 and ensuing years in the manner and by the methods of valuation employed in 1922 and prior years. The complaint averred that the actual cash

8 F.(2d)—14

value of the mines in 1922 did not exceed the sum of $20,000,000, whereas the valuation fixed by the taxing officers of the state was upwards of $7,000,000 in excess of that sum. After the filing of the complaint a temporary injunction was granted, restraining the collection of a portion of the taxes until the further order of the court, upon payment of taxes for the year in controversy, computed on a valuation of $20,000,-000. Later the parties to the suit represented to the court that they had entered into an agreement which, if carried out, would result in a settlement of the controversy between them, and the case was stricken from the trial calendar by consent.

Some months later a motion to restore the case to the trial calendar was interposed by the plaintiff. This motion was supported by an affidavit setting forth the terms of settlement agreed upon and a failure on the part of the defendants to abide by these terms. The terms of settlement, so far as deemed material, were that the plaintiff would at once pay the taxes for the years 1922 and 1923, without costs, penalties, or interest; that the taxing officers would fix the valuation of the mines for the year 1924 in a certain way, differing in some respect from the methods pursued in the past; that a deduction of $2,000,000 should be made by the board of equalization from the assessed valuation in 1924, 1925, and 1926, by way of compensation for excessive taxes paid in the past, and that the payment of the taxes would in no wise prejudice the rights of the parties to the suit. It was further averred in the affidavit that the taxes for 1922 had been paid pursuant to and in reliance upon the agreement in question. A supplemental answer was later filed by the defendants, setting up the payment of the taxes for 1922 and 1923 as grounds for dismissal. To this supplemental answer, the plaintiff filed a pleading, erroneously styled a supplemental answer, in which the payment of the taxes for the two years was not denied, but in which it was averred in substance that the taxes were so paid pursuant to the agreement in question, and not otherwise, and that the payments were not voluntary. Upon the record, and upon the facts appearing therein, the court below entered a decree of dismissal, on the ground that by the payment of the taxes for 1922 and 1923 the questions involved became moot. From this decree the plaintiff has appealed.

[1] Beyond question the payment of the taxes for 1922, whether voluntary or in-

voluntary, ended all controversy over the taxes for that year in a court of equity. The state and its legal subdivisions had received all they were entitled to and all they claimed, and the tax lien was satisfied and discharged. The appellant questions the right of the court to find that the taxes had been paid, on the record before it; but this is a mere quibble. It was so expressly stated in the affidavit filed by the appellant in support of the motion to restore the case to the trial calendar, it was admitted by the evasive reply to the supplemental answer, and it is even expressly admitted in the brief filed in this court. And if the payment of the taxes ended the controversy, it was the right and the duty of the court to so declare. It is said, however, that the taxes for 1924 had been levied at the time of the dismissal, and that the validity of these taxes was in issue. While the taxes for 1924 may have been levied at that time, that fact did not appear on the face of a complaint filed in January, 1923. The taxes for 1924 were in issue to the same extent as the taxes for 1925 and subsequent years, and to the same extent only; that is, by the general challenge to the methods employed by the taxing officers in fixing the valuation of the property for the purposes of taxation.

[2] It only remains to consider therefore, whether the court should have retained the complaint for the purpose of inquiring into the legality of the methods employed by the taxing officers of the state in assessing and fixing the valuation of this class of property for the purposes of taxation. It is clear to us that it should not. In the first place, the propriety of restraining state officers from pursuing any given method in fixing the valuation of property for the purposes of taxation, where the property itself is subject to the tax, is questionable, to say the least, for, as said by the Supreme Court in First National Bank v. Albright, 208 U. S. 548, 553, 28 S. Ct. 349, 350 (52 L. Ed. 614): "We cannot tell, and much more positive averments of intent than those before us would not warrant a court in prejudging, what the assessing officer will do. It is not for a court to stop an officer of this kind from performing his statutory duty for fear he should perform it wrongly. The earliest moment for equity to interfere is when an assessment has been made."

But, aside from this, the methods employed by the taxing officers in 1922 and preceding years were by no means uniform.

Thus, in the seven years preceding 1922 they ascertained the average annual net income from the mine by dividing the total net income for the five years immediately preceding by 5, and the average net income as thus ascertained was capitalized at the rate of 15 per cent. or at some higher rate. From this was deducted the assessed valuation of operative and other property used in connection with the mine. In 1922 the average annual net income was ascertained by dividing the total net income for the six years immediately preceding by 5,277, and the annual net income as thus ascertained was capitalized at the rate of 15 per cent., with the same deductions as before. And, if we may look to the supplemental bill of complaint tendered by the appellant, for purposes of illustration only, we find that the methods employed in 1923 and 1924 differed from each other and differed from all the rest; that is to say, there was no uniformity whatever in the methods employed in ascertaining the average annual net income of the mine, and no uniformity whatever in the rate or factor employed in capitalizing that income. Whether the valuation was correct, or too high, or too low, in any given year would therefore depend upon the method employed in ascertaining the average annual net income, and more especially upon the rate or factor employed in capitalizing that income.

What form of decree could a court of equity enter in such a case? It seems manifest that it should not attempt to prescribe the mode or manner in which the average annual net income shall be ascertained, nor should it attempt to prescribe or fix the rate or factor to be employed in capitalizing that income, and, if it should attempt neither of these things, nothing remains but to condemn the method in its entirety. But why should this be done? The court is concerned with results, not with methods, and why should it condemn a method which can work no injury unless wrongly or improperly employed? The character of mining property is constantly undergoing change, with exhaustion in some mines and new discoveries in others, and the changes must be met and dealt with as they arise. The problems confronting the state officers are difficult at best. They cannot be solved through the application of some simple, unyielding formula; much less can they be solved in advance by the decree of a court of equity. For these reasons we are of opinion that the payment of the taxes for 1922 and 1923 left the bill of complaint without any sem-

blance of equity, and upon such payments appearing the complaint was properly dismissed.

The decree is therefore affirmed.